UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**TSM TECHNOLOGY MANAGEMENT, INC., HIGHWINDS CAPITAL, INC. and HIGHWINDS NETWORK GROUP, INC.,**

      **Plaintiffs,**

v.                                      **Case No: 6:14-cv-1061-Orl-41TBS**

**ARI BENOWITZ and BLACKSTONE NETWORKS, LLC,**

      **Defendants.**
                                    /

**ORDER**

THIS CAUSE is before the Court on Defendant Blackstone Networks, LLC's ("Blackstone") Motion to Dismiss (Doc. 13) and Defendant Ari Benowitz's Motion to Dismiss (Doc. 14). Blackstone asserts that the claims against it should be dismissed for lack of personal jurisdiction, while Benowitz argues that the claims against him are barred because they were compulsory counterclaims in a previous case. As set forth below, the motions will be denied.

**I.**     **BACKGROUND**

Plaintiffs TSM Technology Management, Inc. ("TSM") and Highwinds Network Group, Inc. ("HNG") are wholly-owned subsidiaries of Plaintiff Highwinds Capital, Inc. ("HCI"). (Compl., Doc. 1, ¶ 5). All three are Florida corporations with their principal places of business in Winter Park, Florida. (*Id.* ¶¶ 2–4). In June 2010, HCI entered a Stock Purchase Agreement ("SPA") with, among others, Benowitz, a California resident, to acquire Bandwidth Consulting, Inc. ("BandCon"), a Delaware limited liability company with its principle place of business in Orange County, California. (*Id.* ¶¶ 6–7, 19–21). Under the SPA, Benowitz and the other BandCon

shareholders would be compensated, in part, based on the future performance of, among others, BandCon and HNG. (*See* SPA, Doc. 1-2, § 1.2).

Concurrent with the acquisition, Benowitz entered an Employment Agreement with TSM, becoming the Chief Revenue Officer of HNG. (Compl. ¶ 22). Under the Employment Agreement, upon the termination of Benowitz's employment for any reason, he was required to "return all property of [TSM], including but not limited to, the Company's confidential information and trade secrets, and any other proprietary data or objects acquired through [Benowitz's] employment with [TSM]." (Employment Agreement, Doc. 1-1, ¶ 8(f)). Benowitz also signed a Noncompetition and Nonsolicitation Agreement ("Noncompetition Agreement," Doc. 1-5), which prohibited him from (1) using or disclosing the trade secrets or confidential information of Plaintiffs, (2) operating a competing internet network services business, or (3) inducing customers or employees to terminate their relationships with Plaintiffs or otherwise interfering with the customer or employee relationships of Plaintiffs. (Noncompetition Agreement ¶¶ 1–2, 6–7).

On January 20, 2012, Benowitz's employment was terminated. (Compl. ¶ 26). Shortly thereafter, Benowitz founded Blackstone. (*Id.* ¶ 42). According to Plaintiffs, Blackstone provides the same types of services as those of HNG and BandCon. (*Id.* ¶¶ 43–48). Plaintiffs allege that Benowitz breached his Employment Agreement by retaining confidential and trade secret information after his termination. (*Id.* ¶¶ 25–30, 32). According to Plaintiffs, Benowitz and Blackstone then utilized the confidential information and trade secrets to improperly compete with Plaintiffs in violation of Benowitz's Noncompetition Agreement (*id.* ¶¶ 38–39, 54(a)), and the Florida Uniform Trade Secrets Act, Fla. Stat. § 688.001, *et seq.*, (*id.* ¶¶ 61–72). Plaintiffs allege that Benowitz further breached his Noncompetition Agreement by, among other things, operating a competing business through Blackstone, (*id.* ¶ 45); providing internet network services to several

of Plaintiffs' customers, (*id.* ¶¶ 47–48); interfering with Plaintiffs' employee relationships by causing a TSM employee to divert a business opportunity to Blackstone (*id.* ¶ 51); and by retaining at least one TSM employee to provide services for Blackstone, (*id.* ¶ 52). Plaintiffs assert that Blackstone is also liable for Benowitz's breaches of his Noncompetition Agreement either because Blackstone is Benowitz's alter ego (*id.* ¶ 59), or, in the alternative, because Blackstone procured the breaches, (*id.* ¶¶ 75, 77). Finally, Plaintiffs allege that Blackstone and Benowitz tortiously interfered with Plaintiffs' contractual relationships with other employees by inducing those employees to breach their employment and confidentiality agreements. (*Id.* ¶¶ 84–85).

This case, however, is not the first litigation between these parties. Upon his termination and Plaintiffs' refusal to pay Benowitz the deferred compensation, Benowitz filed suit against HCI and HNG in California state court.[1] (Cal. Compl., Doc. 14-1). Benowitz alleged that he was fraudulently induced to enter the SPA and a related escrow agreement, (*see id.* ¶¶ 2, 7, 30–40), and that HCI and HNG breached those agreements by undermining Benowitz's ability to perform his job and undercutting BandCon's profitability, (*see id.* ¶¶ 60–65). Benowitz also alleged that HCI and HNG decided to terminate Benowitz's employment approximately seven months prior to informing Benowitz, intentionally delaying the termination to defeat a pay-out under the Employment Agreement tied to Benowitz's length of employment. (*Id.* ¶ 66).

HCI and HNG filed a cross-complaint[2] in the California action, alleging that Benowitz was the one who made fraudulent misrepresentations in connection with the SPA. (Cal. Cross-Compl., Doc. 14-3, ¶ 8). Specifically, it was alleged that Benowitz inflated BandCon's worth, manipulated

---

[1] Benowitz did not sue TSM in the California action.

[2] A "cross-complaint" in California is analogous to a federal "counterclaim." *See* Cal. Civ. Proc. Code § 428.80 ("The counterclaim is abolished. Any cause of action that formerly was asserted by a counterclaim shall be asserted by a cross-complaint.").

its financials, and actively concealed his fraud. (*Id.* ¶¶ 10, 17–26). The Cross-Complaint also alleged that, as HNG's Chief Revenue Officer, Benowitz engaged in self-dealing by, for example, entering into a sweetheart deal benefitting a company owned by Benowitz to HNG's detriment. (*Id.* ¶¶ 27–28). At the time of filing the instant motions, the California action was ongoing.

Both Benowitz and Blackstone have now moved to dismiss this case. Blackstone's Motion challenges this Court's ability to exercise personal jurisdiction over it. Benowitz's Motion asserts that the claims against him were compulsory counterclaims in the California action.

## II.   PERSONAL JURISDICTION

"A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). "When a defendant challenges personal jurisdiction by submitting affidavit evidence in support of its position, the burden . . . shifts back to the plaintiff to produce evidence supporting jurisdiction" unless "the defendant's affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) (quotations omitted).

As a federal court sitting in diversity, this Court must "undertake[] a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *United Techs.*, 556 F.3d at 1274.

### A.   Florida's Long-Arm Statute

"The reach of the Florida long-arm statute is a question of Florida law. Federal courts are required to construe such law as would the Florida Supreme Court." *Id.* (quotation omitted). While

Florida's long-arm statute provides for both general and specific jurisdiction, *see* Fla. Stat. § 48.193(1)–(2), only specific jurisdiction is at issue here. Long-arm jurisdiction in Florida is proper when, among other things, "[a] person, whether or not a citizen or resident of this state, who personally or through an agent . . . [commits] a tortious act within this state." *Id.* § 48.193(1)(a)(2).

Plaintiffs allege that Blackstone intentionally committed tortious acts outside of Florida that caused injury to Plaintiffs in Florida. Under Eleventh Circuit precedent, such allegations are sufficient to establish long-arm jurisdiction in Florida. *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1216–17 (11th Cir. 1999) (acknowledging a conflict among the Florida state courts, but holding that, absent a decision from the Florida Supreme Court, "we are bound in this case to follow [the Eleventh Circuit's] firmly established precedent, which interprets [the tort provision][3] to apply to defendants committing tortious acts outside the state that cause injury in Florida"); *see also Internet Solutions Corp. v. Marshall*, 39 So. 3d 1201, 1206 n.6 (Fla. 2010) (declining to address the unresolved "issue of whether injury alone satisfies the requirement of [the tort provision]," but acknowledging the Eleventh Circuit precedent on the matter); *Louis Vuitton*, 736 F.3d at 1354 (continuing to apply the analysis in *Posner* and its progeny).

Blackstone does not rebut Plaintiffs' jurisdictional allegations, but rather it argues that those allegations fail to state a prima facie case of personal jurisdiction. Specifically, Blackstone asserts that Plaintiffs have failed to allege injury in Florida with the requisite specificity. However, Blackstone has provided no authority requiring this Court to apply a heightened pleading standard.

---

[3] The Florida long-arm statute was amended in 2013. The amendment changed the location of the tort provision, which was previously found at subsection (1)(b), but it did not change the substance of the provision. *Compare* Fla. Stat. § 48.193(1)(b) (1995) *with* Fla. Stat. § 48.193(1)(a)(2) (2013).

*See Bracewell v. Nicholson Air Servs., Inc.*, 680 F.2d 103, 104 (11th Cir. 1982) (requiring that the plaintiff allege only "sufficient facts in his complaint to support a reasonable inference that the defendant can be subjected to jurisdiction within the state" in order to state a prima face case of personal jurisdiction).

To establish a prima facie case of long-arm jurisdiction, Plaintiffs must only allege tortious actions taken by Blackstone that, if true, would have caused injury to Plaintiffs in Florida. Plaintiffs have done so. *See VAS Aero Servs., LLC v. Arroyo*, 868 F. Supp. 2d 1374, 1380 (S.D. Fla. 2012) (noting that, where Florida-based company's trade secrets were misappropriated, the harm would be "felt primarily—if not exclusively—in Florida"); *H.E.R.O., Inc. v. Self*, No. 12–60038–Civ., 2012 WL 1802431, at *5 (S.D. Fla. May 17, 2012) ("[T]he disparagement and tortious interference complained of could have been committed . . . anywhere that Plaintiffs' business associates are found. It is clear, however, that the real effects of [Defendant's] alleged infringement, disparagement, and tortious interference would be felt where the Plaintiffs . . . reside and conduct business—which, in this case, is Florida."); *eLandia Int'l, Inc. v. Ah Koy*, 690 F. Supp. 2d 1317, 1330 (S.D. Fla. 2010) (determining a that a prima facie basis existed to conclude that the defendant caused harm to plaintiff in Florida where the plaintiff's principal place of business was in Florida).

Accordingly, Plaintiffs have established a basis on which this Court can exercise personal jurisdiction under Florida's long-arm statute over Blackstone. However, this does not end the inquiry. The exercise of personal jurisdiction over Blackstone must also comport with due process.

### B.   Due Process

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72 (1985) (quoting *Int'l Shoe Co.*

*v. Washington*, 326 U.S. 310, 319 (1945)). Generally, the constitutional requirement is "satisfied when in personam jurisdiction is asserted over a nonresident corporate defendant that has 'certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 414 (1984) (quoting *Int'l Shoe*, 326 U.S. at 316).

"In a case involving specific jurisdiction, a defendant's contacts with the forum state must satisfy three criteria:" (1) "they 'must be related to the plaintiff's cause of action or have given rise to it;'" (2) "they must involve 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum;' and" (3) "they 'must be such that the defendant should reasonably anticipate being haled into court there.'" *Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 925 (11th Cir. 2007) (quoting *McGow v. McCurry*, 412 F.3d 1207, 1214 (11th Cir. 2005)). "The plaintiff bears the burden of establishing the first two prongs, and if the plaintiff does so, 'a defendant must make a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice.'" *Louis Vuitton*, 736 F.3d at 1355 (quoting *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1267 (11th Cir. 2010)).

It is undisputed that Plaintiffs' claims are related to, and arise out of, Blackstone's alleged contacts with Florida. Therefore, the first prong—relatedness—is met, and the Court will focus on prongs two and three: purposeful availment and fairplay and substantial justice.

        1.     *Purposeful Availment*

"In intentional tort cases, there are two applicable tests for determining whether purposeful availment occurred": the "effects test" set forth in *Calder v. Jones*, 465 U.S. 783 (1984), and the "traditional purposeful availment analysis." *Louis Vuitton*, 736 F.3d at 1356 (emphasis omitted).

Here, Plaintiffs meet the effects test, and therefore, an analysis of the traditional factors is unnecessary. The effects test is based on the premise that a defendant purposefully avails himself of a forum's laws when he intentionally and tortiously commits actions that are expressly aimed at a plaintiff in that forum and that such intentional tortious activities provide a defendant with fair notice that injury will occur in the forum. *Calder*, 465 U.S. 789–90. Therefore, the effects test "is based on a plaintiff's ties to the forum state and the harm suffered by the plaintiff." *Louis Vuitton*, 736 F.3d at 1357; *see also Calder*, 465 U.S. at 788–89 (holding that, in intentional tort cases, the plaintiff's contacts with the forum "may be so manifold as to permit jurisdiction when it would not exist in their absence").

Accordingly, purposeful availment may be established under the effects test where the alleged tort "was (1) intentional; (2) aimed at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in the forum state." *Licciardello v. Lovelady*, 544 F.3d 1280, 1286 (11th Cir. 2008). There is no question that the allegations against Blackstone satisfy the first factor as the allegations include intentional tortious interference with Plaintiffs' contractual relationships and intentional misappropriation of Plaintiffs' trade secrets. Blackstone argues that, even if it did these things, Plaintiffs have failed to establish that Blackstone's alleged conduct was aimed at Florida. Specifically, Blackstone argues that the individuals who supposedly breached their contracts with Plaintiffs due to Blackstone's conduct were not in Florida, and the alleged misappropriation of trade secrets was via Benowitz in California. Although cleverly made, Blackstone's argument misses the mark.

Intentional, tortious conduct is "aimed at the forum state" when it is aimed at a resident of that state. *See Brennan v. Roman Catholic Diocese of Syracuse N.Y., Inc.*, 322 F. App'x 852, 856 (11th Cir. 2009) ("[P]ersonal jurisdiction is proper over a defendant who commits an intentional

and allegedly tortious act expressly aimed at the plaintiff in the forum state."); *Licciardello*, 544 F.3d at 1284 (noting that a defendant has "fair warning that he may be subject to suit [in a forum] . . . if the defendant has 'purposefully directed' his activities at residents of the forum"). As alleged, Blackstone knew that Benowitz and other employees had contracts with Plaintiffs and that Plaintiffs were located in Florida. If true, Blackstone's acts to interfere with those contracts and to misappropriate trade secrets were aimed at Plaintiffs in Florida. The actions would have also caused injury to Plaintiffs in Florida, as discussed previously in Section II.A. *See also Brennan*, 322 F. App'x at 856 ("The 'effects' test provides that due process is satisfied when the plaintiff brings suit in the forum where the 'effects' or 'brunt of the harm' caused by the defendant's intentional tortious activity was suffered." (quoting *Licciardello*, 544 F.3d at 1285–87)).

### 2.  *Fair Play and Substantial Justice*

"Having found that there were sufficient minimum contacts, the question that remains is whether this is 'one of those rare cases in which minimum requirements inherent in the concept of fair play and substantial justice . . . defeat the reasonableness of jurisdiction.'" *S.E.C. v. Carrillo*, 115 F.3d 1540, 1547 (11th Cir. 1997) (quoting *Asahi Metal Indus. Co. v. Superior Court of Cal., Solano Cnty.*, 480 U.S. 102, 116 (1987) (Brennan, J., concurring)). It is Defendant's burden to establish this third prong, *Louis Vuitton*, 736 F.3d at 1355 (quotation omitted), which requires consideration of the following factors: (1) "the burden on the defendant"; (2) "the forum's interest in adjudicating the dispute"; (3) "the plaintiff's interest in obtaining convenient and effective relief"; and (4) "the [interstate] judicial system's interest in resolving the dispute." *Licciardello*, 544 F.3d at 1288 (citing *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)). However, none of these factors are considered in a vacuum. The Court "must consider whether the forum's interest in this dispute and the plaintiff's interest in obtaining relief are outweighed by the

burden on the defendant of having to defend himself in a Florida court." *Id.* at 1284. Here, Blackstone has failed to establish that the burden created by litigating in Florida outweighs Plaintiffs' and Florida's interests.

As previously noted, the allegations made against Blackstone involve intentional, tortious actions taken against a Florida resident. "Florida has a very strong interest in affording its residents a forum to obtain relief from intentional misconduct of nonresidents causing injury in Florida." *Id.* at 1288. Moreover, in addition to the usual interest a plaintiff has in litigating in its home forum, the United States Supreme Court has indicated that, in the case of intentional misconduct, a plaintiff should not generally be required to travel to the defendant's state of residence to obtain relief. *Calder*, 465 U.S. at 790 ("An individual injured in California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly cause the injury in California."); *see also Licciardello*, 544 F.3d at 1288 ("[T]he Florida plaintiff, injured by the intentional misconduct of a nonresident expressly aimed at the Florida plaintiff, is not required to travel to the nonresident's state of residence to obtain a remedy.").

In support of its argument against exercising personal jurisdiction, Blackstone suggests that it would be extremely burdened by litigating in Florida because it is a small business. Blackstone offers no evidence demonstrating a financial or other burden. While it is obvious that litigating in a forum across the country from one's state of residence imposes a burden, that, in and of itself, is insufficient to render an exercise of jurisdiction violative of due process. *See Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 259 (11th Cir. 1996) ("The burden on the defendants occasioned by litigating outside of [their state of residence] is not slight, but modern methods of transportation and communication reduce this burden significantly."). Blackstone also argues that most of its witnesses are located in California, outside of the reach of this Court's subpoena power.

However, Blackstone has not presented any evidence that securing witness testimony on a voluntary basis will be impractical in this case.

To the extent that Blackstone argues that an exercise of jurisdiction is improper because it did not commit the tortious conduct of which it is accused, that is a decision on the merits of the case and premature at this stage. *Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 733 (11th Cir. 1982) ("Where the jurisdictional issues are intertwined with the substantive merits, the jurisdictional issues should be referred to the merits, for it is impossible to decide one without the other." (quotation omitted)); *see also Bell v. Hood*, 327 U.S. 678, 682 (1946) ("[I]t is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction.") Additionally, to the extent Blackstone argues Plaintiffs' claims were compulsory counterclaims in the California action, that argument is unrelated to personal jurisdiction and is rejected for the reasons set forth in Section III below.

### III.   COMPULSORY COUNTERCLAIM

Benowitz asserts that the claims brought against him are barred because they were compulsory counterclaims in the California action. "Whether failure to bring a compulsory counterclaim in a prior state court proceeding bars a diversity action on that claim in a federal district court, depends upon state law." *Montgomery Ward Dev. Corp. v. Juster*, 932 F.2d 1378, 1380 (11th Cir. 1991). Here, as the parties agree, California law applies because the state court proceeding was in California. *See Grynberg v. Grey Wolf, Inc.*, No. 07–cv–01742–LTB–BNB, 2008 WL 687363, at *3 (D. Colo. Mar. 11, 2008) (applying Texas law in Colorado federal court where underlying state case was in Texas); 18 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 4414 (2d ed.) ("[F]ailure to make a counterclaim made compulsory in a state proceeding by state law precludes later action on the claim in federal court, unless exclusive

federal jurisdiction defeats the compulsion."). California's compulsory counterclaim rule provides:

> [I]f a party against whom a complaint has been filed and served fails to allege in a cross-complaint any related cause of action which (at the time of serving his answer to the complaint) he has against the plaintiff, such party may not thereafter in any other action assert against the plaintiff the related cause of action not pleaded.

Cal. Civ. Proc. Code § 426.30(a).

A "'[r]elated cause of action' means a cause of action which arises out of the same transaction, occurrence, or series of transactions or occurrences as the cause of action which the plaintiff alleges in his complaint." *Id.* § 426.10(c). California's compulsory counterclaim rule is similar to its federal counterpart, which also utilizes the "transaction or occurrence" language. Fed. R. Civ. P. 13(a). Therefore, California courts have found "guidance in federal decisions construing the [federal] compulsory counterclaim statute." *Align Tech., Inc. v. Bao Tran*, 102 Cal. Rptr. 3d 343, 351 (Cal. Ct. App. 2009). Under both the California Rule and the federal Rule, courts should determine whether there is a "logical relationship" between the two claims. *Id.* at 352; *Republic Health Corp. v. Lifemark Hosps. of Fla., Inc.*, 755 F.2d 1453, 1455 (11th Cir. 1985). "[T]here is a logical relationship when the same operative facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights, otherwise dormant, in the defendant." *Republic Health*, 755 F.2d at 1455 (quotation omitted).

Benowitz relies on *Currie Medical Specialties, Inc. v. Bowen*, 186 Cal. Rptr. 543 (Cal. Ct. App. 1982) and *Align* in support of the proposition that previous claims relating to a contractual relationship bar all subsequent claims relating to that same contractual relationship because they would have been compulsory counterclaims. Benowitz reads these cases too broadly. In both *Currie* and *Align*, the first and second cases involved different claims arising from the same events. That is not the situation here.

The claims in the California action arise from different events than the claims in this case. Specifically, the California claims arise from the negotiation of, and entry into, the SPA and actions taken during the course of Benowitz's employment. The allegations here involve Benowitz's post-employment conduct. While some of the allegations in this case involve breaches of the Employment Agreement and the Noncompetition Agreement, the provisions at issue are those that survived Benowitz's termination, and the allegations are not related to any actions taken by Benowitz while employed by Plaintiffs. The mere fact that the claims at issue here are tangentially related to Benowitz's employment does not transform them into compulsory counterclaims. *See Dakota Grp., LLC v. Waffle House, Inc.*, No. 3:11–cv–586 RS/CJK, 2012 WL 2952380, at *3 (N.D. Fla. July 19, 2012) ("[L]itigation over one portion of a contract does not necessarily make every claim under the contract compulsory."). The claims here are distinct from those in the California action; proof of these claims requires different evidence; and the operative facts of each of the claims are separate. Thus, the claims were not compulsory counterclaims in the California action.[4] *See Satterfield v. CFI Sales & Mktg., Inc.*, No. 6:09–cv–1827–Orl–28DAB, 2012 WL 640740, at *4 (M.D. Fla. Feb. 28, 2012) (determining that the defendants' counterclaim failed the logical relationship test, even though both claims involved the plaintiff's "employment" because "[t]he operative facts and the elements of proof for each of the claims [were] separate and distinct").

### IV.   CONCLUSION

As set forth above, this Court can properly exercise personal jurisdiction over Blackstone, and the claims against Benowitz were not compulsory counterclaims in the California action.

---

[4] Because the Court finds that the claims were not compulsory under section 426.30, California Civil Procedure Code, it will not address Plaintiffs' arguments regarding the contractual forum selection clauses.

Accordingly, it is **ORDERED** and **ADJUDGED** that Blackstone's Motion to Dismiss (Doc. 13) is **DENIED.** Likewise, Benowitz's Motion to Dismiss (Doc. 14) is **DENIED**.

**DONE** and **ORDERED** in Orlando, Florida on March 24, 2015.



CARLOS E. MENDOZA
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record